836 F.2d 422
 Sandra L. MONTAGUE, Appellee,
v.
Joy M. HEATER and Ted Heater, d/b/a Specialized Auto Sales, Appellants,
Oren Henry.
Sandra L. MONTAGUE, Appellee,
v.
Joy M. HEATER and Ted Heater, d/b/a Specialized Auto Sales,
Oren Henry, Appellant.
 Nos. 86-2585, 86-2602.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 14, 1987.
Decided Jan. 4, 1988.
 
 Robert G. Duncan, Kansas City, Mo., for appellants.
 Dale K. Irwin, Kansas City, Mo., for appellee.
 Before FAGG, Circuit Judge, BRIGHT and ROSS, Senior Circuit Judges.
 BRIGHT, Senior Circuit Judge.
 
 
 1
 This case arises from defendants' Joy Heater, Ted Heater and Oren Henry sale to plaintiff Sandra Montague of a 1973 Oldsmobile Cutlass. The car had been driven 168,188 miles, but its odometer read only 68,188 miles. Mrs. Montague filed a three-count complaint alleging common law fraud and misrepresentation, violations of the federal odometer statute, 15 U.S.C. Sec. 1988 (1982 & Supp. IV 1986), and the Missouri state odometer statute, Mo.Ann.Stat. Sec. 407.536 (Vernon Supp.1987). A jury found against all three defendants on all three counts, and awarded Mrs. Montague $1,400 in actual damages and $55,000 in punitive damages.[1] The defendants appeal. We affirm.
 
 
 2
 For reversal, Joy and Ted Heater, the operators of the Specialized Auto Sales dealership, argue: (1) the court erred in refusing to submit their converse jury instructions; and (2) the court erred in submitting to the jury the state odometer law claim. Oren Henry, their business associate, appeals separately and argues (1) it was error to permit Montague to amend her complaint the morning of trial; (2) there was not sufficient evidence to establish a principal/agent relationship between Oren Henry and Ted Heater; (3) the court erred in failing to give a limiting instruction concerning evidence of a lawsuit by the State of Iowa against Ted Heater for odometer fraud; and (4) the damage award is excessive.
 
 I. BACKGROUND
 
 3
 In June of 1985, defendant Oren Henry purchased, on behalf of Specialized Auto Sales, a 1973 Oldsmobile Cutlass. Oren received an odometer statement and a title assignment which stated the vehicle's odometer had "rolled over" and had over 100,000 miles on it. On June 27, 1985, the Montague family negotiated with Ted Heater and tentatively agreed upon a sale price for the Oldsmobile, and left a deposit of $25. After the meeting with the Montagues, Ted Heater contacted Oren Henry to get his approval to see the car.[2]
 
 
 4
 Having obtained Henry's approval, Ted Heater took the title certificate, along with its assignment endorsed by former car owner Jack Miller Chrysler Plymouth, and by Joy Heater, to the bank which provided the funds for the sale. The bank then sent these documents, in addition to its lien perfection copy of the title application, to the Department of Revenue. While the assignment of title reflected the car's true mileage, the title application showed incorrectly that the car had been driven only 68,188 miles. Ted Heater delivered to the Montagues a copy of the title application, and no other document. The Montagues never saw the title assignment, nor any other document which would have notified them that the car had been driven 168,188, not 68,188 miles.
 
 
 5
 The Montagues testified that they received no information the vehicle had been driven 100,000 miles, and that they did not discover the true mileage until a month or two after the purchase. Heater testified that he discussed with Mrs. Montague the fact that he did not know the mileage and could not guarantee it.
 
 
 6
 Sandra Montague filed her initial complaint against Ted Heater and Joy Heater, d/b/a Specialized Auto Sales, on November 6, 1985. After deposition testimony revealed Oren Henry's participation in Specialized Auto Sales' business, Mrs. Montague joined Oren Henry as a defendant under a joint venture theory. The Friday before trial, Mrs. Montague advised Oren Henry that an amended complaint would be filed that day alleging a principal/agent theory instead of a joint venture theory. On the morning of trial, the court granted Mrs. Montague's leave to amend.
 
 
 7
 The jury returned verdicts against all defendants on all counts. The jury awarded actual damages of $1,400 and punitive damages as follows: Joy Heater--$10,000; Ted Heater--$25,000; Oren Henry--$20,000. This appeal followed.
 
 II. DISCUSSION
 A. Oren Henry
 1. The Grant of Plaintiff's Leave to Amend
 
 8
 Oren Henry argues that the district court erred in granting plaintiff's leave to amend on the morning of trial. Oren contends that he prepared his defense based on Mrs. Montague's joint venture theory, and was prejudiced when Mrs. Montague changed her theory of liability at the last minute.
 
 
 9
 We fail to see how Henry was prejudiced by the court's granting Mrs. Montague's leave to amend in any way. The proofs required to establish a principal/agent relationship are similar to those necessary to establish a joint venture.[3] Under either theory, the pivotal issue related to Henry's right to control the conduct of Heater. Thus, a shift in theories did not affect Henry's defense preparation. Indeed, as the Montagues point out, Henry engaged in no discovery after being made a party to the lawsuit, and his strategy was apparently to expend minimal time and effort in defense of this case and simply file bankruptcy if he lost, as he has now done. No evidence exists supporting Henry's contention that the court's grant of Mrs. Montague's leave to amend constitutes prejudicial error. Consequently, we reject Henry's claim.
 
 2. Sufficiency of the Evidence
 
 10
 Henry further contends that Mrs. Montague presented insufficient evidence to support the finding that Heater acted as Henry's agent in the car transaction.
 
 
 11
 To establish the existence of an "agency" relationship, one must prove "the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the others so to act." Southern Pac. Transp. v. Continental Shippers Ass'n, Inc., 642 F.2d 236, 238 (8th Cir.1981) (emphasis added). According to Henry, Heater undertook the car sale solely on his own behalf and acted independently throughout.
 
 
 12
 The evidence presented at trial justified a submission of the agency issue to the jury. Ted Heater testified at trial that Henry bought and sold cars with him for some ten years, splitting any profits 50/50. Heater further testified that when the Montagues offered him $2,100 for the car, he agreed with the understanding that he would have to confer with Henry. Later, when discussing car financing with the Montagues, Heater told Sandra Montague he would have to obtain Henry's permission with regard to the terms proposed.
 
 
 13
 Henry's control over the vehicle's sale is evidenced by the fact that Henry signed, as agent for Specialized Auto Sales, the odometer statement received from the car's previous owner. Henry could just as easily have signed over the car's title. Moreover, had title been transferred without his approval, he would have had a claim for relief against Heater. Because the evidence indicates that Heater acted in Henry's behalf, and Henry controlled crucial aspects of the car sale, we conclude that the jury might find that Mrs. Montague had established a principal/agent relationship. We thus reject Henry's assignment of error.
 
 
 14
 Henry additionally argues the court erred in refusing to instruct the jury that court records reflecting that Ted Heater was previously convicted of odometer fraud should only be considered in connection with Ted Heater and not as to Oren Henry. He further asserts error in the court's refusal to grant a new trial on the issue of damages. Upon careful review of the record, we conclude that Henry was not entitled to limiting instructions on the evidence, and that the jury's award of damages, though heavy, did not merit a new trial. Hughes v. Box, 814 F.2d 498, 504 (8th Cir.1987). Accordingly, we determine that the district court committed no prejudicial error with respect to the award against Henry.
 
 B. Ted and Joy Heater
 1. Converse Instructions
 
 15
 The trial court, in its order setting this case for trial, directed that "[p]roposed instructions in diversity cases where state law applies should conform to MAI (the Missouri Approved Jury Instructions). Rule 70.02(f) of the MAI allows for converse instructions when submitted by a defendant."[4] Judge Wright, however, refused the converse instructions submitted by the Heaters. The Heaters argue that the court erred in using part, but not all, of the Missouri system of pattern instructions.
 
 
 16
 We disagree. The grant or denial of jury instructions is a matter of procedure controlled by federal, not Missouri, law. Wright v. Farmers Co-op, 620 F.2d 694, 696 (8th Cir.1980), appeal after remand, 681 F.2d 549 (8th Cir.1982); Turlington v. Phillips Petroleum Co., 795 F.2d 434, 441 n. 3 (5th Cir.1986) (rejecting plaintiff's claim that trial judge erred in refusing to follow Texas Pattern Juror charges). In addition, "a party is not entitled to have the jury instructed in any particular language, so long as the jurors understand the issues and are not misled." Swift v. R.H. Macy's & Co., 780 F.2d 1358, 1361 (8th Cir.1985) (citing Keltner v. Ford Motor Co., 748 F.2d 1265, 1267 (8th Cir.1984)). The Heaters do not assert, nor does the record indicate, that the jurors did not understand the issues put to them, or were misled in any way. Consequently, the court did not err in refusing to adopt the Heaters' proposed converse instructions.
 
 C. State Odometer Law Violation
 
 17
 Count II of Mrs. Montague's complaint alleged defendants' violation of Missouri's odometer law which states that if the seller of an autombile knows that the true mileage is different from the number shown on the odometer, then the seller must submit an affidavit accompanying the assignment of title containing all facts known concerning the true mileage of the vehicle. Mo.Ann.Stat. Sec. 407.536 (Vernon Supp.1987).[5] The Heaters argue that they did not violate the Missouri odometer statute, and thus the court erred in submitting Count II to the jury. Whether or not the Heaters violated the Missouri odometer statute is immaterial, however, because the jury returned a separate verdict on the common law fraud claim, the only claim upon which plaintiff has elected to pursue collection.
 
 
 18
 We note, however, that the district court's submission to the jury of the state law violation does not appear to be error. The court's instruction on the state law violation focuses on Ted Heater's failure to furnish Montague with an affidavit containing all facts known by Specialized Auto Sales concerning the true mileage of the car. The court thus interpreted the state statute as being severable in nature in the sense that the first two sentences relate to the correct odometer reading being placed on the certificate of title, whereas the third sentence relates not to the number placed on the title, but to any discrepancies that may exist between the odometer reading and the true mileage. The third sentence mandates that if the transferor knows that the odometer reading differs from the true mileage, the transferor must include an affidavit containing all facts known concerning the difference. Heater knew that the odometer reading fell short of the car's actual mileage by 100,000 miles. Yet, he failed to follow the statute's mandate. This failure violated the statute according to the court's instructions to the jury. This construction of the statute appears consonant with the purposes of the legislation. See Metro Auto Auction v. Director of Revenue, 707 S.W.2d 397 (Mo.1986) (en banc) (the purpose of requiring the odometer reading to be placed on the certificate of title is to inform the buyer of the correct mileage reading on vehicles purchased). Because the court's interpretation of the statute works no injustice on the Heaters and does not taint in any way the common law fraud conviction, we reject the Heaters' assignment of error.
 
 
 19
 Affirmed.
 
 
 
 [1]
 Separate awards were made as to each defendant
 
 
 [2]
 Oren Henry, in his statement of facts, presents the initial sale agreement as final, rather than tentative. Thus, Heater's consultation with him about the price was, he argues, after the fact and devoid of legal significance
 
 
 [3]
 Proof of a joint venture requires evidence of a community of interest in a common purpose, mutual right of control, right to share in profits and a duty to share in losses. Bell v. Green, 423 S.W.2d 724, 731 (Mo.1968). A principal/agent relationship is established by showing manifestation of consent by one person to another that the other shall act on his own behalf, and subject to his control, and consent by the others so to act. Leidy v. Taliaferro, 260 S.W.2d 504, 505 (Mo.1953)
 
 
 [4]
 Rule 70.02(f) provides, in pertinent part:
 Instruction Directing Verdict--Converse Instruction. Instructions may be given, authorizing a verdict for a defendant, upon finding the converse of any essential fact or element essential to a verdict for plaintiff. The request of a converse instruction should not be deemed to waive any objection to the instruction conversed.
 
 
 [5]
 Section 407.536 provides in pertinent part:
 
 
 [1]
 Any person transferring ownership of a motor vehicle previously titled in this or any other state shall do so by assignment of title and shall place the mileage registered on the odometer at the time of transfer above the signature of the transferor. The notarized signature of the transferor below the mileage shall constitute an affidavit of mileage. If the true mileage is known to the transferor to be different from the number of miles shown on the odometer or the true mileage is unknown, an affidavit from the transferor shall accompany the assignment of title which shall contain all facts known by the transferor concerning the true mileage of the motor vehicle. That affidavit shall become a part of the permanent record of the motor vehicle with the Missouri Department of Revenue. The Department of Revenue shall place on all new titles issued after September 28, 1977, a box titled "mileage at the time of transfer"
 Mo.Ann.Stat. Sec. 407.536 (Vernon Supp.1987).